The first case is Hwang v. Barr Good morning, Your Honors. May it please the Court, my name is Joshua Barr David on behalf of Petitioner Mr. Hwang. Mr. Hwang is also referred to in the briefs as Mr. Dong, but for clarity's sake I'll just refer to him as Mr. Hwang. I want to start with what we're not asking this Court to do. We're not asking this Court to do is to require the BIA to apply the correct legal standard to motions to reopen. In fact, the facts are largely in agreement between the parties and the board. What we're asking is to require the BIA to apply the correct legal standard to motions to reopen, and we're asking that this Court require the BIA to properly analyze the facts. Ginsburg They stated the right standard, but your argument is they stated it but didn't apply it. Barr Well, they stated two different standards, Your Honor, and that's part of the conclusion. In conclusory fashion, the board mentions prima facie a well-founded fear, but in the actual paragraph that is the sole paragraph analyzing the facts with respect to the treatment of Falun Gong practitioners, the board specifically said that Mr. Hwang has not demonstrated that he is likely to be persecuted, which is a legal standard that was expressly rejected by the Supreme Court in Cardozo-Fonseca. Specifically said that a well-founded fear of persecution does not require a likelihood of occurring. Rather, even something as low as a 10 percent chance could suffice to establish a well-founded fear. Certainly, 10 percent chance does not mean likely to occur. It's unlikely to occur, but certainly there is what the Supreme Court said, a reasonable person in the same circumstances would fear persecution. And because in their analysis of the facts, the board applied the wrong legal standard, it is our position that at the very least a remand should be required for the board to apply the proper legal standard when analyzing the facts. Judge Goldberg And that's all we have to do, right, to satisfy your client? Barr Absolutely, Your Honor. That's all we're asking. We don't expect this court to determine that Mr. Hwang conclusively met his burden of proof to establish reopening for the purposes of seeking asylum. All we're asking this court is to require the agency in the first instance to apply the proper legal standard. It's important to note, as I said, because at the beginning the board mentions the proper legal standard and in its conclusion they mention the proper legal standard. Essentially, this court is left to guess what the agency, what legal standard the agency was applying because in their analysis of the facts, they then applied the wrong legal standard. And this court obviously is an appellate review body, not a fact finder in the first instance, and that's why we don't ask this court to review those facts. We're just asking the agency to do so. With respect to the facts determined by the board, the board didn't apply those facts to the appropriate legal standard, and had they done so, we believe that it should have reached a different conclusion. I would note that the facts in agreement are, one, that country conditions changed in 1999 well after Mr. Hwang's 1992 application for initial proceedings in immigration court. So that fact is not in dispute. What is also not in dispute, as the board states, is that the evidence reflects that the Chinese government continues to take a variety of measures against the Falun Gong adherents, ranging from harassment or detention to more serious forms of punishment, but it leaves out what it thinks those more serious forms of punishment would be. But it later goes on to state that Chinese practitioners, they're acknowledging leaders, they say the most serious forms of treatment, but they say the regular practitioners who participate in Falun Gong activities in the United States, which is Mr. Hwang, may be detained or subject to reeducation upon their return to China. And the BIA doesn't continue and elaborate on why this mistreatment would not amount to persecution. Correct. And the failure to analyze these facts and analyze the record as a whole is the second area that we highlight in our briefs. And we would just draw the court's attention to the most recent congressional report, U.S. government-issued report, which contains members of the Department of State, which the board in matter of HLH said is the best evidence of country conditions, says that, speaking of how average Chinese citizens are treated in these reeducation camps, which the board concedes is a possibility, authorities took measures to transform detainees, subjecting them to sleep deprivation, food deprivation, forced feedings, beatings, electric shock, mental abuse, sexual abuse, and other cruel treatment. That's contained in page 312 of the record. The congressional report goes on. It says that authorities in these reeducation camps regularly tortured them with electric batons, handcuffed them in painful positions for long cells, among other forms of mistreatment. That's on page 238 of the record. Your client conveniently didn't begin practicing Falun Gong until after he'd been denied twice, right? That is correct, Your Honor. But what is the The cynic might suggest that this is really just a put-up job to avoid deportation after 15 years, 20 years? That could be suggested. However, it wasn't suggested below. It wasn't suggested by the department. It wasn't found by the BIA. In fact, it was conceded that he is a member of Falun Gong. He presented voluminous documentation of his participation and regular participation in Falun Gong activities and Falun Gong organizations. So his sincere subjective practice of Falun Gong is not in dispute. So had that been something that was disputed by the It's not in question anyway. I'm sorry, Your Honor? It's not in question. Correct. It is not a question. Leaving aside the But if we grant the relief you seek vacating this last order, would the sincerity of his belief come up for consideration before the BIA? There certainly would be issues of res judicata, Your Honor, because it wasn't previously challenged at the prior in now two. This is the second time before this Court on this same motion. It had previously been remanded for further consideration, and at no point was it contested. If that is something that is Everybody's had a bite of the apple. Correct, Your Honor. Back at the fact-finding stage. Correct. That would certainly be our position. But if it was something that was raised, obviously we would address it because we do think that issues of res judicata. But if there were factual concerns that weren't presented in the record and the government sought to introduce it, I'm sure that there would be procedural mechanisms for the agency to resolve that. But certainly that issue is not before this Court. Unless the Court has other questions, I do have two minutes remaining for rebuttal, and I will We have reserved two minutes for rebuttal. We'll hear from the government. Thank you, Your Honors. Thank you, Your Honor. May it please the Court, my name is Brooke Maurer for the U.S. Attorney General. Petitioner's counsel is correct. There is really only one technical issue before here, and for the government, it's whether the petitioner demonstrated prima facie eligibility for relief that he sought. And in disagreement with petitioner's suggestion that the Board applied an improper standard, we've noted that while the Board's reasoning may have been inartful, if you look at both the current decision and the prior one that was initially remanded where they discussed the prima facie eligibility, they both used the same standards, the same cases, and right now we're arguing over two words. And you see that they didn't stray from how they looked at the record in its entirety and evaluated it in context with petitioner's claim. Now, with regard to the petitioner's prima facie eligibility, the Board clearly reaches out and looks at every piece of evidence that was submitted. As you can see throughout the decision, they highlighted and discussed what was there. And what wasn't there, as specifically noted in the government's brief, is any type of individualized risk that you see in the other cases that petitioner has cited throughout his brief, where a petitioner formulated their beliefs and practice of Falun Gong while they were in China, and in other cases where they had family members and others that were actually taken up and subjected to forms of persecution as they fled and escaped it. And that is not the case in this situation here. The BIA did note that Chinese citizens who practice Falun Gong may be detained or subject to re-education, which sounds ominous to me, but upon their return to China. Does not that sound like persecution to you? Well, that, I mean, as it is, I mean, the may is on a level of how many get picked up and how they are actually treated. It still doesn't go to become like a substantial evidence in supporting their prima facie determination. He hasn't presented any evidence that he knows of anyone that was done or anybody in his family or anybody that he's practiced with as he started practicing here. So there's a different applicability, I believe, like as far as like him practicing here in the United States versus developing it and being like looked at and having the government have an interest in him. He would be returning at home with no idea that he's even practicing and he would have to be found and then the whole string of suppositions would have to follow in order for that to actually come to fruition. The Chinese government appears to be very interested in Falun Gong practitioners. Is that correct? According to what was cited by the board, they stated that, yes, that is correct. So once he got there, if he continued to practice, he would become a target of the following down a chain of suppositions is like when we got there, if he continued to practice, if somebody found him. Well, he says he would continue to practice. But we still stand by the point that that still does not support reversing the board's determination that he failed to establish prima facie eligibility. Otherwise, basically, anybody who says they're going to go back and practice Falun Gong has a right to stay. That is correct. They're entitled to asylum just by saying they intend to practice Falun Gong if they are returned to China. Well, essentially, yes. They could utilize, like, somebody in a situation such as Mr. Huang who came here and had practice in, who went before the court in 1995, and then the conditions did change. His change of self-induced change of circumstances could avert any type of issues with being able to, like, he would be able to apply repeatedly until and succeed. I might not disagree with you on anything that you've said, Ms. Morrow, but it seems to me when you question whether, when we question whether the petitioner is credible saying he's going to go back and practice, that that's a decision to be made by the fact finder, and that's the IJ. Well, I think at this point, I mean, whenever you have the motion reopened, like, obviously, we're going to assume that he is credible. And that's what the board did. They looked at it, and then they looked at it with the dearth of the evidence and determined that it still didn't make the, you know, prima facie eligibility. So. But when we get to parsing out. Correct. And it would go back. The IJ would technically be the one that would ultimately. Ms. Sullivan's point is, hey, anybody can come in here and claim that, and that's, he's absolutely right in my view. Correct. But. Do you agree that. Sorry, I was just going to say it may be better for the agency to make those determinations in the first instance. Do you agree that you're barred from raising the issue of whether he sincerely holds the Falun Gong? Oh, yes. I believe that would have to be a determination made by the agency. Oh, I think Mr. Bardavid just suggested that race judicata would prevent you from revisiting that. You disagree? No, I disagree with that. I think that they would be able to evaluate that in the record as a whole, as well as, I mean, additional records, because I believe, which we can't raise since it wasn't addressed by the board. I mean, the most recent country reports in there is from 2012. And this case originated in 2015. In 2016, I would think that a more current form of country reports would also be reviewable, as well. So, but. But all that goes to the merits ones. That is correct. If we do. Yes. That is correct, Your Honor. So the board used the word likely twice, which you would agree is not the standard, right? No, I agree. Like, it was not the most artful couching of terms in there. But I do want to point you to, like I said, pages 82 through 84 of the record, which is the initial decision. And you can see that the court didn't change, like, how it applied the law to the facts. It just didn't clearly state how it was applying it. Every word counts, Your Honor. Of course. As this court, along with the Ninth Circuit, knows, after that wave broke back in 2004. Yes. And it passed. Okay. But if there's no further questions, the government will rest on their brief, if that's all right. Thank you, counsel. Thank you. Mr. Bardavid, you have reserved two minutes for rebuttal. Thank you, Your Honor. To start with, we're not just talking about two words. We're talking about two words that are legal terms of art. Likely is a very specific term of art in the immigration context and has separate legal requirements than the well-founded fear standard. The likely standard applies to withholding of removal, which by law explicitly requires 50 percent or more in order to establish eligibility for withholding of removal. So simply saying that these are just two words where parsing is not correct when we're talking about two words with legal term of art and a different and much higher, substantially higher legal standard. With respect to the fact that Mr. Huang has not presented any evidence that the Chinese government is looking for him, that was not the basis of the board's decision. The board simply stated that the form of harm that he may, in their words, may face would not rise to the level of persecution without further analysis. In this court, again, given the record of the way Falun Gong members are treated in reeducation camps, which in the board's words may be a possibility, the board has not explained why that treatment, which can include torture, sexual abuse, and other forms of mistreatment, would not rise to the level of persecution. Your Honor, just to refer to your question again about that this is a self-induced change, this is a prima facie standard, and the prima facie standard requires assuming all of the facts are true unless inherently disbelievable. The board is to presume the fact's true in deciding the motion to reopen. I may have misstated when I say that the issue is a matter of res judicata and can't be challenged. Our point is that it can't be challenged on the motion to reopen stage. We completely concede the government would have every opportunity before the immigration judge if they wanted to present facts challenging Mr. Huang's sincerity of his beliefs and any other facts. We would not claim that there is res judicata with respect to that. We are just simply asking to give him an opportunity for hearing on what he claims and the reasons that he claims to have a fear of return. For those reasons, we would ask the court to reopen. Well, can I just ask you a question? It doesn't turn on one word, but if the word likely were not used in the sentence or sentences where it is used, you wouldn't be arguing that there was an error, right? With respect to our first argument that there's a misapplication of the legal standards required, probably not, no. But the fact that they used a legal term of art, an incorrect legal standard, certainly leaves this court to guess whether or not it did, given its mishmash of various legal standards. There was no cite to a case that used that legal term of art. They cited to the right cases that state the right standard, correct? Yes, Your Honor. And so likely could have been used as a legal term of art or it could have been used as just, you know, a colloquial expression as to the fact that this person is not really facing persecution or they've not made a prima facie case of that. I would respectfully disagree, Your Honor, with Your Honor, that the board knows the language that it's using and it uses that word deliberately. In my experience at immigration court, the adjudicating agencies, whether it's the board or the immigration judges, are very aware of the various terms of art that apply to the person. And I don't think that the board would simply choose to use that word in a colloquial sense. Thank you. Thank you very much. That is a reserved decision. The next matter on our calendar is United States v. Attila. May it please the court, John Elwood for Haqqan Attila. For the very first time in the 40-year history of the International Emergency Economic Powers Act, the government here prosecuted a foreign national for conduct committed abroad for purportedly evading or avoiding the imposition of secondary sanctions, that is, sanctions on foreigners restricting access to U.S. markets based on a finding by the U.S. Embassy. For four reasons set forth in our brief, we think that was reversible error. With the limited time I have here today, I was planning, subject to the court's questions, on focusing on our first issue in the brief, that is, whether this was even a crime, evasion or avoiding secondary sanctions, and the last issue, which is whether it was error to exclude extrinsic evidence of Zarab's jailhouse conversation. So to begin, it was demonstrably not a crime to evade or avoid the imposition of secondary sanctions. It only referred to prohibitions that are already in place, not prohibitions that might yet be imposed. If the secondary sanctions had already been in place, would Mr. Attila, could he have been convicted of attempting to avoid the punishment of those secondary sanctions? I think that there's a second argument. We have two arguments why it's not a crime to evade or avoid secondary sanctions. One is it involves only existing prohibitions. We have a second argument that because there was no showing that this involved, the regulation refers to transactions, you know, subject by people or property that's subject to the jurisdiction of the United States. The government has never shown that Mr. Attila was subject to the jurisdiction of the United States because he's a foreigner, and there was never any, the jury was not required to make a judgment that he was subject to the jurisdiction of the United States. So I think that's a second argument, but I think it's even more compelling if you just focus on the fact that there was no prohibition in place. Now, if you look at, you know, the government argues that you have to give avoid a different meaning than evade or else there'd be surplusage, but that is simply not the case. This is kind of stock language. This evade or avoid, you know, attempt to violate, et cetera, is stock language. It's used in, you know, scads of executive orders that are used for justice purpose. We cited four of them in our reply brief at page 17. One of them is available at page 101 of the special appendix, so you can look at it. But it's referring to, there it refers to any of the prohibitions set forth in this order. There are only existing prohibitions in the order, so it couldn't have had the meaning that the government tries to ascribe to it. And the government, of course, the Treasury knows about all of these other orders, which is why it's given the order the same interpretation or given the regulations the same interpretation that we have. That when you talk about prohibitions, it only refers to prohibitions that are already in place, not ones that could be imposed. The government says at page 38 to 39 of its brief, it concedes that for most of the verbs in the phrase, that it is best understood to refer to existing prohibitions that have already been imposed, unquote, again at 38 to 39 of the government's brief. But again, when you look at the fact that all of the other clues, it really is just a phrase that Scalia and Garner used. And that evade or avoid are both terms that are used to define each other. And they're set up by, within one comma. So it's like evade or avoid, attempts to violate, et cetera. And so you should interpret them, I think, together. At a minimum, that's a reasonable interpretation. Unless you find that that's foreclosed by the, unambiguously foreclosed by the text of the regulation, I think you have to say it's at least a reasonable interpretation. If that's so, we should win under the rule of lenity. But secondly, as Judge, then Judge Kavanaugh said, it's rule of law 101 that you can't penalize somebody retroactively based on a new interpretation of a regulation. And that's exactly what the government is arguing for here. Well, is it a new interpretation? It is a new interpretation. The, if you look at page A780, the Department of the Treasury took the position up until essentially the government, the prostitution here overrode it for purposes of the, I think the fourth superseding indictment, took the position that it only referred to existing prohibitions. And at a minimum, that was the interpretation they took at the time that Mr. Attila did the conduct that's charged here. This was. The secondary sanctions in this case were never put in place because the argument  They still haven't. They still haven't. Mr. Attila helped them avoid it. That's the, that's the government's theory, that he helped them avoid it. But even knowing all that they have, they still haven't imposed it today. No secondary sanctions ever on this? On Hulk Bank or Zarab. That's correct. This was not harmless error. The government tries to argue that because there are two ways it could have violated IEPA conspiracy, both primary sanctions and conspiracy to avoid secondary sanctions, that that was harmless error. But as we point out, even though he was committed to bank fraud, he was also acquitted of conspiracy, or I'm sorry, he was also acquitted of money laundering. And money laundering has two elements. Bringing the money to the United States and violating one of those other crimes, bank fraud or IEPA conspiracy. So they're inherently inconsistent verdicts. And this court has said, and U.S. versus Moran Tawala said it in our brief, that quote, inconsistency in the jury verdicts means that the court can do no more than try to guess which of the inconsistent verdicts is the one the jury really met. Unquote. We put that out in our opening brief. The government never responded to it. So in a way, they forfeited the. I'm sorry, what? That's as far as you are pushing the argument. That's as far as we're pushing the inconsistent inconsistency argument. Has Mr. Zahrab been tried yet? I'm sorry? Has Mr. Zahrab been tried? No, he has not. He has not. Is he still awaiting trial? You'd have to ask the government. I think so. I will. That brings us to the second point, which is that the government has